# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-1188
Filed February 11, 2026

———————————

**Austin James Wood,**
Petitioner–Appellee,

v.

**Kamryn Lynn Jacobsen,**
Respondent–Appellant.

———————————

Appeal from the Iowa District Court for Story County,
The Honorable Amy M. Moore, Judge.

———————————

**AFFIRMED**

———————————

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West
Des Moines, attorney for appellant.

Katherine R.J. Scott of New Point Law Firm, PLC, Ames, attorney for
appellee.

———————————

Considered without oral argument
by Chicchelly, P.J., and Buller and Langholz, JJ.
Opinion by Chicchelly, P.J.

**CHICCHELLY, Presiding Judge.**

Kamryn Jacobsen appeals the order deciding custody, visitation, and support of the child she shares with Austin Wood.  She challenges the part of the order granting the parties joint physical care and asks us to grant her physical care.  Because the record shows that joint physical care is in the children's best interests, we affirm.

## I. BACKGROUND FACTS AND PROCEEDINGS.

Kamryn and Austin are the parents of W.J.J.W., born in 2024.  Their romantic relationship lasted about a year, ending in the eighth month of Kamryn's pregnancy.  After the child was born, Kamryn provided physical care and allowed Austin parenting time for brief periods.

When the child was two months old, Austin petitioned the court to decide paternity, custody, visitation, and support of the child.  The court entered a temporary order providing joint legal custody of the child and placing him in Kamryn's physical care.  The order included a schedule for Austin's parenting time.  Over a four-week period, the schedule gradually increased to provide Austin weekly parenting time from 5 p.m. on Sunday to 5 p.m. on Tuesday.

The trial was held shortly after the child turned one year old.  The parties agreed to joint legal custody of the child and asked the court to set child support under the guidelines.  They disagreed about who should have physical care, with each seeking physical care.  The trial established the following:

- Kamryn lives in Boone with her grandparents and attends Des Moines Area Community College.  She expects to earn her associate's degree in early childhood education in May 2026 before attending the

University of Northern Iowa for a bachelor's degree in education. Her class schedule allows her to provide for the child's needs without the need for childcare.

- Austin lives in Ames with his mother, grandfather, and sister. He works in the maintenance department of a hospitality provider, earning around $34,000 per year. His weekly work schedule is 7 a.m. to 3 p.m. from Wednesday through Sunday, and his family provides childcare while he is working.

The district court entered its order in June 2025. It noted that "both parents dearly love their child," and can care for the child and provide him with a safe home. Kamryn, however, resisted joint physical care based on her concerns about communication issues. She believed the current parenting schedule set out in the temporary order works well and that a joint-physical-care arrangement would result in Austin having less parenting time and relying more on his family for childcare. The court dismissed those concerns:

> Although the parties continue to have issues with coparenting communication, it is clear that both parents support and recognize the need for the child's relationship with each parent. It does not appear that the current level and frequency of acrimony and conflict between the parties would make joint physical care inappropriate or untenable. The court further believes that as the parties mature as people and as parents, they will work towards improving their communication with one another in order to keep W.J.J.W.'s best interests paramount.

> Furthermore, the court does not find that Mr. Wood should be "penalized" for receiving childcare assistance from his mother and his former aunt. The reality is that both parties' schedules will evolve over time and both parties will in all likelihood require the use of outside caregivers while they attend school or work in the future. Basing a long-term physical care decision upon the parties' current schedules would be short[sighted] and would not be in W.J.J.W.'s best interests.

On this basis, the court granted Kamryn and Austin joint physical care of the child, with parenting time alternating every two or three days. Each parent was also granted two uninterrupted nonconsecutive weeks of parenting time during the summer. Once the child begins kindergarten, parenting time will alternate weekly.

## II. SCOPE AND STANDARD OF REVIEW.

We review physical-care determinations de novo. *See Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). On de novo review, "[w]e examine the entire record" before us and "decide anew the issues" presented on appeal. *Id.* at 5 (citation omitted). We give weight to the district court's factual findings, especially those involving witness credibility, but we are not bound by them. *Id.*

## III. PHYSICAL CARE.

Kamryn challenges the physical-care provisions of the order. She contends the child's best interests are not served in a joint-physical-care arrangement. She asks that the court grant her physical care instead.

Our overriding consideration in deciding whether to grant joint physical care is the children's best interests. *See In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). The goal "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* In making this determination, we consider the factors listed in Iowa Code section 598.41(3) (2025). *See* Iowa Code § 600B.40(2) (stating that the factors set out in section 598.41(3) apply in deciding custody of a child born to unmarried parents); *Hansen*, 733 N.W.2d at 696 (stating that the factors listed under section 598.41(3) are relevant to determine whether joint physical care is in the best interest of the

child). We also consider whether one parent has historically been the primary caregiver, the parents' ability "to communicate and show mutual respect," the "degree of conflict between" them, and the degree to which they "are in general agreement about their approach to daily matters." *Hansen*, 733 N.W.2d at 696–99. We look at the unique facts and circumstances of the case in deciding which physical-care arrangement serves the child's best interests. *Id.* at 700.

Kamryn argues against joint physical care based on the approximation rule, in which "the proportion of custodial time the child spends with each parent approximates the proportion of time each parent spent performing caretaking functions for the child prior to the parents' separation." *Id.* at 697 (citation omitted). Although *Hansen* did not adopt the approximation rule in its entirety, it held that the principle "is a factor to be considered by courts in determining whether to grant joint physical care." *Id.* Here, the parties separated before the child's birth. Although Austin's parenting time was limited before the court's temporary order, that was not by Austin's choice. His parenting time was constrained by Kamryn's wishes. Although some of Kamryn's reasons for limiting Austin's parenting time were born of genuine concern, some were based on unreasonable expectations.[1] While these

---

[1] The record shows that Kamryn was unwilling to allow Austin overnight visits while she was breastfeeding W.J.J.W. While breastfeeding may be one reasonable consideration when deciding a parenting schedule, Kamryn stopped breastfeeding the child before trial. An exhibit of text messages between the parties shows that Kamryn denied Austin parenting time based on unreasonable expectations. In one message, she told Austin, "I'm not gonna give my baby to someone who doesn't know what every cry and noise means. I need to know he's 100% taken care of and I 100% don't want him to be crying and not being given what he wants/needs." While the sentiment is understandable, it is unrealistic to expect that one must intuit the needs of a young child before being suitable to provide care. Because each child is different, there is a learning curve for every

concerns are understandable for a first-time parent, they do not justify denying joint physical care.

Kamryn also argues against joint physical care by claiming the record shows she and Austin are unable to coparent because of issues with communication and conflict. But a review of the record does not bear out her claims. At times, each party shows some frustration with the other. But the level of conflict is far below the level that would make coparenting ineffective.

The record shows that a joint-physical-care arrangement serves the child's best interests. We therefore affirm.

## IV. APPELLATE ATTORNEY FEES.

Kamryn requests that we award her $13,000 in appellate attorney fees. Austin resists her request and seeks an award of $2,533 in appellate attorney fees.

Whether to award attorney fees is a matter of discretion. *In re Marriage of Kisting*, 6 N.W.3d 326, 338 (Iowa Ct. App. 2024); *see also* Iowa Code § 600B.26 (granting the court the authority "to award the prevailing party reasonable attorney fees"). Although we consider the merits of the appeal and whether the party was obliged to defend the district court's decision on appeal, our primary consideration is the parties' relative financial positions. *Id.*

We decline to award appellate attorney fees.

**AFFIRMED.**

---

parent, grandparent, childcare provider, babysitter, teacher, and coach who works with a child.